The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser, and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence of record, the Full Commission hereby reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 * * * * * * * * * * * RULING ON DEFENDANTS' MOTION TO DISMISS
In the defendants' brief to the Full Commission, the defendants made motion to dismiss the plaintiff's appeal for her failure to file a Form 44 and brief. The Full Commission takes note of the recent decision of the North Carolina Court of Appeals inRoberts v. Wal-Mart Stores, Inc., 619 S.E.2d 907 (2005), in which the court held that the Full Commission violated its own rules by failing to require that the plaintiff state with particularity the grounds for appeal; however, the Full Commission finds the present case to be distinguished fromRoberts because the plaintiff in the instant matter is prose. Industrial Commission Rule 801 permits the Commission to waive its own rules in the interest of justice. Pursuant to Rule 801, and in the interest of justice, the Industrial Commission has a long history of affording pro se plaintiffs greater leniency in regard to the application of the rules of the Commission. Upon review of the defendants' motion and in light of the plaintiff's pro se status, the Full Commission, in its discretion and in the interest of justice, declines to dismiss the plaintiff's appeal. Thus, the defendants' motion to dismiss the plaintiff's appeal is hereby DENIED.
 * * * * * * * * * * * EVIDENTIARY MATTERS
At the hearing before the Deputy Commissioner, defendants submitted the following:
 a. A November 13, 2001, Disciplinary Report, which was admitted into the record, and marked as Defendants' Exhibit (1);
 b. A Job Application, which was admitted into the record, and marked as Defendants' Exhibit (2);
 c. A November 28, 2001, Incident Report, which was admitted into the record, and marked as Defendants' Exhibit (3);
 d. An Industrial Commission Form 19, which was admitted into the record, and marked as Defendants' Exhibit (4);
 e. A December 4, 2001, Disciplinary Report, which was admitted into the record, and marked as Defendants' Exhibit (5);
 f. Defendant-Employer's Termination Policy, which was admitted into the record, and marked as Defendants' Exhibit (6); and,
 g. A September 12, 2001 Employee Medical Questionnaire, which was admitted into the record, and marked as Defendants' Exhibit (7).
The objections raised in the depositions of Dr. Shirley Ocloo and Dr. Joseph Zuhosky are HEREBY OVERRULED.
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at and subsequent to the hearing before the Deputy Commissioner and in a Pre-Trial Agreement, which was admitted into the record and marked as Stipulated Exhibit (1) as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission, which has jurisdiction of the parties and of the subject matter.
2. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of parties.
3. On November 28, 2001, the date of the injury giving rise to this claim, the parties were subject to and bound by and the North Carolina Workers' Compensation Act.
4. On all relevant dates, an employment relationship existed between the plaintiff and the defendant-employer.
5. On all relevant dates, Pharmacists Mutual Insurance Company was the carrier on the risk.
6. The plaintiff's injury that is the subject of this claim is a back injury. The defendants do not stipulate that the plaintiff incurred a back injury on the claimed date.
7. On all relevant dates, the plaintiff's average weekly $221.13, yielding a compensation rate of $147.42.
8. The plaintiff is not currently working for defendant-employer.
9. Marked at the hearing and submitted subsequently thereto by the parties was a Packet of Medical Record, which was admitted into the record, and marked as Stipulated Exhibit (2) and a Packet of Industrial Commission Forms and Pleadings, which was admitted into the record, and marked as Stipulated Exhibit (3).
10. The issues to be determined are as follows:
 a. Whether the plaintiff sustained an injury by accident;
 b. If so, to compensation, if any, is the plaintiff entitled; and,
 c. Whether the plaintiff's claim is barred by N.C. Gen. Stat. §§ 97-22 and 97-23.
Based upon all the competent evidence of record, and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, the plaintiff was fifty years of age, with her date of birth being January 8, 1954. The plaintiff was educated through the twelfth grade.
2. The plaintiff worked for defendant-employer as a home health aide. In that capacity, the plaintiff's duties included assisting elderly with showers, performing light housekeeping, and providing companionship.
3. At the hearing, the plaintiff testified that on Wednesday, November 28, 2001, she was mopping a hallway at a patient's home when she slipped in dog urine, causing her to fall on her back. The plaintiff further testified that following this incident, she telephoned Lisa Proctor, R.N., who was her supervisor, and reported her injury. The plaintiff testified that she informed Nurse Proctor that she had severely injured her back, and that Nurse Proctor informed her that she could seek medical care at any time she needed. According to the plaintiff, she informed Nurse Proctor that she did not believe her condition warranted medical care, but that she would inform Nurse Proctor if or when she did need care.
4. Lisa McLaurin, R.N., testified that she received a telephone call from the plaintiff on November 28, 2001, from her client's house regarding a fall. Nurse McLaurin further testified that the plaintiff was laughing about the event, denied being injured, and declined to be examined by a physician on that day when that option was presented. Based upon her conversation with the plaintiff, Nurse McLaurin prepared an Incident Report which indicates that the fall occurred in the bathroom, and that the plaintiff had landed on her buttocks. Based on these facts, the Full Commission finds that the plaintiff gave timely notice of her injury to her employer.
5. The plaintiff was able to work the remainder of that week on Thursday and Friday, and on the following Monday, December 3, 2001.
6. Regarding her past medical history, the plaintiff testified that prior to her November 28, 2001 injury, she was in good health, with the exception of having diabetes and arthritis in her shoulders. The plaintiff also testified that she had no prior significant back problems.
7. Although the plaintiff declined medical treatment immediately following the incident in question, she testified that the incident severely injured her, causing immediate pain in her lower and upper back with pain radiating into her leg. According to the plaintiff, by Sunday, December 2, 2001, her condition was such that she sought medical attention at Kings Mountain Hospital. At that facility, the plaintiff was examined by Dr. A. Charles Akhimien, and reported having fallen and experiencing pain only in the scapular area, located at the T7-T8 area of the spine, between her shoulder blades. Dr. Akhimien indicated that the plaintiff did not report experiencing any lumbar spine symptoms as the result of the fall, and no history of any radicular signs, and that had she done so, these symptoms would have been noted in his records. Based upon his examination, Dr. Akhimien opined that the plaintiff had sustained an acute myofacial strain of the dorsal region of the back, which is soft tissue strain. Dr. Akhimien did not consider the plaintiff's injury to be severe, and found no evidence of damage to the back.
8. Plaintiff failed to report to work on December 4, 2001, and had not contacted defendant-employer or the client she was to assist. Nurse McLaurin testified that the defendant-employer attempted to contact the plaintiff, but that her telephone had been disconnected. Thereafter, pursuant to defendant-employer's "No Call-No Show" policy, the plaintiff was terminated. The Full Commission finds that the plaintiff was terminated for the type of misconduct that would have resulted in the termination of a nondisabled employee, and that the termination was unrelated to the plaintiff's compensable injury.
9. Subsequent to her emergency room examination, the plaintiff sought additional treatment from her family physician, Dr. Shirley Ocloo. However, in contradiction to the plaintiff's testimony regarding her past medical history, Dr. Ocloo testified that the plaintiff had a history of chronic back problems dating back to 1995. Dr. Ocloo established that the plaintiff was diagnosed as having osteoarthritis in her lower back on February 20, 1997. On November 6, 1998, the plaintiff reported ongoing symptoms and was diagnosed by Dr. Ocloo as also having a degenerative joint disease. For her back conditions, Dr. Ocloo initially treated the plaintiff with medications, including Motrin, Soma, Flexeril and Naprosyn. By July 16, 1999, the plaintiff reported to Dr. Ocloo that her osteoarthritis and degenerative joint disease conditions were causing increased pain, and she was switched to the medication Celebrex, at two-hundred (200) milligrams. Dr. Ocloo testified that by August 3, 2000, the plaintiff's back problems were such that a lumbar MRI was ordered, which revealed a central disc protrusion of the L5-S1 level with mild central canal stenosis and an indentation of her thecal sac, with an extruded disc at the L5-L4 level. Following this MRI, Dr. Ocloo referred the plaintiff to a neurosurgeon, Dr. Gudeman, who opined that the plaintiff's problems were secondary to the L5-S1 disc, and that she may be a surgical candidate if conservative treatment was not successful.
10. Beginning in 2001, Dr. Ocloo's treatment of the plaintiff included narcotic pain medications. On January 22, 2001, Dr. Ocloo prescribed Lortab for the plaintiff's lower back pain. On March 6, 2001, Dr. Ocloo switched the plaintiff to Darvocet because the Lortab was not providing her relief. Due to her continued reports of pain while on medications, Dr. Ocloo referred the plaintiff to Dr. Herman Gore, a pain specialist, on April 30, 2001. The plaintiff returned Dr. Ocloo on June 21, 2001, to request a refill of her pain medication, which was at that time Oxycodone, a synthetic morphine. On October 31, 2001, twenty-eight (28) days before her fall, the plaintiff again reported a history of chronic low back pain again to Dr. Ocloo.
11. The plaintiff has also received medical treatment from Dr. Joseph Zuhosky, who initially examined her on March 12, 2003. At that time, the plaintiff reported having fallen at work for defendant-employer, landing on her back and the immediate onset of pain in her mid and low back regions, radiating into her leg and upper buttock. For her condition, Dr. Zuhosky continued the plaintiff on Vioxx and recommended physical therapy. On May 15, 2003, an MRI ordered by Dr. Zuhosky was performed and revealed a mid-line disc protrusion at the L5-S1 level, with mild caudal migration of disc material in the spinal canal.
12. The plaintiff's second visit with Dr. Zuhosky was on April 29, 2003. She complained of pain between the shoulder blades and in her lower back into the left leg. Dr. Zuhosky's plan was to proceed with an MRI, which was performed on May 15, 2003. The results of plaintiff's MRI showed that a central L5-S1 HNP slightly eccentric to the right. There was also an effacement of the right S1 nerve root. Dr. Zuhosky also placed her on sedentary job duties. The plaintiff underwent a bilateral S1 transforminal epidural on June 13, 2003. She testified that the shots helped for about two weeks, and then the pain started to get worse. The plaintiff described the pain as needles in her back along with a sharp pain down her leg.
13. On June 20, 2003, the plaintiff had a follow-up appointment with Dr. Zuhosky. She indicated to Dr. Zuhosky that she was having very little improvement following the epidural injection and, though she continued to have some pain on the left side, most of her pain was on the right side in the buttocks going down the right leg. Dr. Zuhosky continued the plaintiff on physical therapy and sedentary job duties, and referred her to Dr. Mark Hartman for a surgical consultation.
14. The plaintiff met with Dr. Hartman on August 11, 2003. After examination, Dr. Hartman concluded that plaintiff was not a surgical candidate.
15. The plaintiff's final visit with Dr. Zuhosky was on August 25, 2003. Dr. Zuhosky felt that the plaintiff was at maximum medical improvement and assigned her a permanent partial disability rating of five percent (5%) to the back.
16. On the issue of causation, Dr. Zuhosky initially testified at his deposition that given the plaintiff's stated history, her symptoms were, more likely than not, the result of her fall at work. However, Dr. Zuhosky was not aware of the plaintiff's prior back condition. Therefore, the Full Commission gives little weight to the causation opinion of Dr. Zuhosky.
17. Dr. Ocloo, who had treated the plaintiff for her pre-existing back condition, testified that the plaintiff's back condition was more severe after her fall in 2001, and was of the opinion that the plaintiff had an exacerbation of her pre-existing back problem when she suffered the fall.
18. Plaintiff has produced sufficient evidence that she sustained her back injury at a judicially cognizable time. Accordingly, on November 28, 2001, the plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer in the form of a specific traumatic incident of the work assigned.
19. Upon being terminated by defendant-employer, the plaintiff began working with Home Instead Senior Care and remained so employed from approximately June 15, 2002, through April 2003. The plaintiff is currently employed with Home Health Services, and there is no evidence that plaintiff has suffered a diminution of her wage-earning capacity.
20. Despite the plaintiff's lack of credibility regarding her pre-existing back condition, the Full Commission finds that the greater weight of the medical evidence of record indicates that the plaintiff's pre-existing back condition was materially aggravated for the worse by her November 28, 2001, injury by accident, and that such injury caused the plaintiff to sustain a five percent (5%) impairment to the back.
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The plaintiff has produced sufficient evidence that she sustained her back injury at a judicially cognizable time. SeeFish v. Steelcase, Inc., 116 N.C. App. 703, 707, 449 S.E.2d 233,237 (1994), cert. denied, 339 N.C. 737, 449 S.E.2d 233, 237
(1994). On November 28, 2001, the plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer in the form of a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6).
2. The aggravation or exacerbation of a pre-existing condition that results in loss of wage earning capacity is compensable under the Workers' Compensation Act. Ruffin v. Compass GroupUSA, 150 N.C.App. 480, 563 S.E.2d 633 (2002); Smith v.Champion, Int'l., 134 N.C. App. 180, 517 S.E.2d 164 (1999). The plaintiff's pre-existing back condition was materially aggravated for the worse by her November 28, 2001, injury by accident, and such injury caused the plaintiff to sustain a five percent (5%) impairment to the back. Id.
3. The plaintiff is entitled to permanent partial disability compensation in the amount of $147.42 per week for 15 weeks (a total of $2,211.30), for the five percent (5%) permanent partial disability rating to her back. N.C. Gen. Stat. § 97-31(23).
4. The plaintiff is not entitled to temporary total disability compensation, pursuant to N.C. Gen. Stat. § 97-29, because (1) she was terminated for misconduct; (2) the same misconduct would have resulted in the termination of a nondisabled employee; and (3) the termination was unrelated to the plaintiff's compensable injury. Seagraves v. Austin Co. of Greensboro,123 N.C. App. 228, 472 S.E.2d 397 (1996).
5. The plaintiff is entitled to have defendants pay medical expenses reasonably necessary to effect a cure, give relief, or lessen her period of disability, including the treatment by Dr. Zuhosky and Dr. Hartman. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
6. The plaintiff gave timely notice of her injury to her employer, pursuant to N.C. Gen. Stat. §§ 97-22 and 97-23.
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. The defendants shall pay to the plaintiff permanent partial disability compensation in the amount of $147.42 per week for 15 weeks (a total of $2,211.30), for the five percent (5%) permanent partial disability rating to her back. Because this amount has accrued, it shall be paid to plaintiff in lump sum.
2. The defendants shall provide for the plaintiff's medical expenses that are reasonably necessary to effect a cure, give relief, or lessen her period of disability, including the treatment by Dr. Zuhosky and Dr. Hartman. N.C. Gen. Stat. §§97-2(19) and 97-25.
3. The defendants shall pay the costs.
This 8th day of August 2005.
 S/_________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/_______________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
 S/_______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER